UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JULIUS SINGLETON | No. 20 CR 42<br><br>Judge Thomas M. Durkin |

**MEMORANDUM OPINION AND ORDER**

Julius Singleton was arrested on September 3, 2019 and found with a handgun and distribution quantities of crack cocaine. Singleton moves to quash his arrest and suppress all evidence obtained as a result of the arrest. R. 32. For the following reasons, that motion is denied.

**Background**

On June 27, 2019, at approximately 2:15 p.m., Quintin Brown was fatally shot as he was standing on a sidewalk in the Rogers Park neighborhood in Chicago. Eyewitnesses reported seeing two individuals emerge from a black Chevrolet Malibu and fire multiple times at Brown. The Chicago Police Department ("CPD") opened an investigation and obtained surveillance footage showing a black Malibu with three occupants driving towards and away from the scene immediately before and after the shooting. The footage also depicted two of the occupants exiting the Malibu from the front and rear passenger doors. The locations of the occupants were consistent with the locations from which spent cartridges were recovered.

Using a video enhancement program, CPD was able to decipher the license plate number and trace its registration to Enterprise Car Rental ("Enterprise"). Upon

1

contacting Enterprise, CPD learned that the Malibu was rented by Deidra Sykes on June 21, 2019 and returned June 28, 2019, the day after the murder. Enterprise gave CPD the three phone numbers Sykes provided. CPD obtained and executed search warrants for historical cell site data for each of the three numbers. None of the numbers hit on cell towers in the vicinity of the June 27th shooting. Instead, the data reflected the phones' locations to be approximately 23 miles away.

On August 2, 2019, CPD detectives interviewed Sykes. Sykes confirmed she rented the Malibu for that week and allowed Singleton (her ex-husband) to borrow it on occasion but could not remember the exact dates. Sykes told the detectives that she did not allow anyone other than Singleton to use the Malibu. Sykes also provided the phone number she used to contact Singleton. CPD detectives secured and executed a search warrant for the historical cell site information for that phone number. On August 16, 2019, after T-Mobile produced the historical cell site information pursuant to the warrant, detectives ran the historical cell site returns through GeoTime, a software that visually maps a cell phone's interactions with cell towers. The report showed the phone number interacting with three cell towers surrounding the site, and around the timeframe, of the shooting. For example, minutes after the alleged time of the shooting, the report shows the phone number interacted with a cell tower located a few blocks north of the site of the shooting.

On August 22, 2019, the detectives met with CPD Officer Mark Nash and informed him about the shooting, surveillance footage, identification of the Malibu, interview with Sykes, and historical cell cite location information for Sykes' and

2

Singleton's phones, including the GeoTime report. Officer Nash obtained a warrant for prospective location information associated with Singleton's phone. Using the location data and a photograph of Singleton, on September 3, 2019, Officer Nash and other CPD officers arrested Singleton on the sidewalk in the vicinity of Granville and Winthrop in Chicago, approximately one mile from the shooting. After detaining Singleton, the officers searched him and found a loaded handgun in his waistband, two plastic bags with smaller baggies of suspect crack cocaine in his pocket and underwear, and approximately $1,314. Singleton admitted during a post-arrest interview that both the gun and the drugs belonged to him and that some of the money came from selling the drugs.

Singleton was charged with being a felon in possession of a firearm, 18 U.S.C. § 922(g)(1), possession of cocaine with intent to distribute, 21 U.S.C. § 841(a)(1), and possession of a firearm in furtherance of a drug trafficking crime, 18 U.S.C. § 924(c)(1)(A). Singleton moves to quash and suppress the evidence obtained as a result of the arrest.

## Discussion

As an initial matter, this motion is being decided based on the parties' written submissions. An evidentiary hearing is not necessary in this case. The material facts are not in dispute and there is no issue of credibility for the Court to resolve. *See United States v. Pierson*, 89 F.4th 976, 984 (7th Cir. 2024) ("An evidentiary hearing is necessary only if there is a disputed factual issue that will affect the outcome of the motion.").

3

Singleton argues that the arrest violated his rights under the Fourth Amendment. As Singleton points out, the officers did not have a warrant to arrest him. However, "[a] warrantless arrest does not run afoul of the Fourth Amendment when supported by probable cause." *United States v. Davis*, 119 F.4th 500, 505 (7th Cir. 2024); *see also United States v. Hammond*, 996 F.3d 374, 390 (7th Cir. 2021) (officers were "entitled to arrest [defendant] without a warrant of any kind [because] probable cause alone is enough for an arrest in a public place"). Probable cause exists when the facts and circumstances known to the officers "reasonably support a belief that the individual has committed, is committing, or is about to commit a crime." *Davis*, 119 F.4th at 505. To determine whether probable cause exists in a given situation, courts "examine the totality of the circumstances in a common sense manner." *United States v. Haldorson*, 941 F.3d 284, 290 (7th Cir. 2019). Additionally, a search incident to arrest is valid so long as it does not extend beyond "the arrestee's person and the area within his immediate control." *Arizona v. Gant*, 556 U.S. 332, 339 (2009).

Here, the facts and circumstances known to police at the time of Singleton's arrest are sufficient to support probable cause. Witnesses saw two shooters emerge from a black Malibu, and surveillance footage showed a vehicle matching that description arriving and exiting the scene of the shooting at the relevant time, with two of its occupants exiting the vehicle in the area where the spent cartridges were recovered. The license plate of the Malibu in the footage matched the Malibu rented by Sykes, Singleton's ex-wife. Sykes reported that only she and Singleton used the

4

vehicle. And cell phone data revealed that Singleton's phone was in close proximity to the scene of the shooting and around the time it occurred, while Sykes' phone was many miles away. Viewed altogether, these facts and circumstances reasonably support a belief that Singleton participated in the shooting.

Singleton contends such facts fall short of reasonable suspicion or probable cause. He emphasizes that no witnesses identified him as a shooter, that the surveillance footage did not make clear who was driving or riding in the Malibu, and that Sykes could not recall the specific dates that Singleton had access to the vehicle. These facts, even if true, do not defeat probable cause. Although he may not have been identified by witnesses or be identifiable in the footage, he was one of two people with access to the vehicle seen on the footage arriving and exiting the crime scene. Phone data for the other person, Sykes, put her 23 miles away. And even if Sykes could not remember the specific dates she allowed Singleton to use the vehicle, she stated that she let him—and only him—use it during the rental period, which included the date of the shooting. Probable cause is a totality-of-the-circumstances analysis viewing the facts and circumstances known to the officers. The facts and circumstances here are sufficient to support a reasonable belief that Singleton was involved in the homicide. Singleton asks for more certainty than the probable cause standard requires. Moreover, because there was probable cause to support an arrest, the Court need not address Singleton's argument that there was no reasonable suspicion to support an initial investigatory stop. *See United States v. Williams*, 731

5

F.3d 678, 683 (7th Cir. 2013) (reasonable suspicion is "more than a hunch but less than probable cause").

Singleton also raises the collective knowledge doctrine, asserting that Officer Nash did not have facts sufficient for probable cause or reasonable suspicion. "The collective knowledge doctrine permits an officer to stop, search, or arrest a suspect at the direction of another officer even if the officer himself does not have firsthand knowledge of facts that amount to the necessary level of suspicion to permit the given action." *United States v. Street*, 917 F.3d 586, 596 (7th Cir. 2019) (citations omitted). In Singleton's telling, all the CPD detectives told Officer Nash was that Singleton was "wanted for murder," which he contends was false. First, the fact that Brown's death was being investigated as a possible homicide and that Singleton was wanted in connection with it was not false. *See* R. 37 at 6. Second, the record does not support that this was the only thing relayed to or known by Officer Nash. Nash's affidavit in support of obtaining a warrant for prospective location information reflects that the CPD detectives gave a detailed summary of their investigation to Officer Nash. *See* R. 36 at 10–13 (affidavit from Officer Nash summarizing information gathered by detectives, including surveillance footage, interviews with Sykes and Enterprise staff, and analysis of phone data for Singleton and Sykes). As stated, those facts available to Officer Nash, who was an arresting officer, are sufficient to support probable cause.

6

Because there was probable cause to support Singleton's arrest, his arrest did not violate the Fourth Amendment, and there is no basis to suppress the evidence found in the search pursuant to that arrest.

## Conclusion

For the foregoing reasons, Singleton's motion to quash and suppress is denied.

ENTERED:

_____
Honorable Thomas M. Durkin
United States District Judge

Dated: June 6, 2025